## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HAYDEN HITCHCOCK,

      Plaintiff,                           Case No.

v.                                            Hon.

SOLO AVIATION, INC; and
JOHN SOLO

      Defendants.

_____

Samuel L. Estenson (P82414)
**DOERR MACWILLIAMS**
**HOWARD PLLC**
*Attorneys for Plaintiff*
301 N. Main St., Suite 260
Ann Arbor, MI 48104
(734) 926-2111
sam@dmhlawyers.com

_____

## <u>COMPLAINT AND JURY DEMAND</u>

    NOW COMES Plaintiff Hayden Hitchcock, by and through his attorneys,

DOERR MACWILLIAMS HOWARD PLLC, and brings this action against Solo

Aviation, Inc. and John Solo. In support thereof, Plaintiff hereby states and alleges

the following:

## PARTIES AND JURISDICTION

1.      Plaintiff Hayden Hitchcock is a resident of Garland County, Arkansas.

2.      Defendant Solo Aviation, Inc. ("Solo Aviation" or the "Company") is a Michigan domestic profit corporation with its principal place of business located in Ann Arbor, Washtenaw County, Michigan.

3.      Defendant John Solo is the founder and owner of Solo Aviation, regularly conducts business in Washtenaw County, Michigan, and upon information and belief is a resident of Jackson County, Michigan.

4.      At all times relevant, Defendants employed Mr. Hitchcock as a flight instructor at Solo Aviation.

5.      The discriminatory employment practices and all other acts alleged in this Complaint occurred within the Eastern District of Michigan.

6.      Defendant Solo Aviation is an employer and Plaintiff was its employee within the meaning of the Civil Rights Act of 1964, as amended 2001, 42 U.S.C. § 2000e, et seq. (Title VII), and the Elliott-Larsen Civil Rights Act, MCLA 37.2101, et seq. (ELCRA).

7.      This action arises under Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e, et seq., Michigan's Elliot-Larsen Civil Rights Act (the "ELCRA"), M.C.L.A. § 37.1101, et seq., and under violations of the State of Michigan's public policy.

8.    The matter in controversy exceeds $75,000.00, exclusive of costs, interest and attorney fees.

9.    This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C.A. § 1343(a)(4) and over state claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in this Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the events giving rise to Plaintiffs' claims took place.

11.    Plaintiff demands that the issues in this case be tried to a jury in accordance with the Seventh Amendment to the U.S. Constitution and Rule 38(b) of the Federal Rules of Civil Procedure.

12.    On or about October 1, 2024, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex and retaliation.

13.    On or about April 14, 2025, Plaintiff received a right to sue letter from the EEOC and he has filed this complaint within 90 days of receiving his notice of rights.

**GENERAL ALLEGATIONS**

14.    Plaintiff Hayden Hitchcock is a licensed commercial pilot with over 1000 total hours of flight time.

15.     Mr. Hitchcock was employed as a Flight Instructor with Defendant Solo Aviation from approximately June of 2023 through April 23, 2024.

16.     At all times relevant hereto, Mr. Hitchcock was well qualified for the position he held and always performed his duties diligently and competently.

17.     However, when Mr. Hitchcock started at the Company, he was deeply disturbed to discover a toxic, sexually-charged work environment where safety was secondary.

18.     Throughout his tenure at Solo Aviation, employees and supervisors at the Company engaged in sexual activity in the workplace, made inappropriate sexual comments and shared sexually explicit materials.

19.     On at least one occasion, Mr. Hitchcock's boss and Solo Aviation's owner, Defendant John Solo, showed sexually explicit or suggestive pictures to Mr. Hitchcock and to female co-workers, which made him and others uncomfortable.

20.     Most troublingly, Mr. Hitchcock observed or was informed about multiple instances of sexual harassment by older male employees, including Mr. Solo, towards young, female employees.

21.     In one instance, Mr. Solo called a young female subordinate who worked at Solo Aviation's front desk and told her that "he was going to take her out to a hangar and change her last name," causing her to feel she had no choice but to quit her employment to avoid further unwanted sexual harassment.

22.     This coworker and other female coworkers confided in Mr. Hitchcock that Mr. Solo's conduct and the conduct of another older, male, senior flight instructor, Scott Foody, upset them and made them uncomfortable.

23.     Upon information and belief, more than one female employee made complaints to Chief Flight Instructor Agatha Nagpal and to HR Manager Deborah Redding, but no corrective actions were ever taken by the Company and the misconduct continued.

24.     Troublingly, Defendants didn't just disregard workplace discrimination and harassment complaints, but basic safety protocols and safety complaints too.

25.     Soon after Mr. Hitchcock began his employment, multiple Solo Aviation planes were experiencing transponder issues, causing the transponders to malfunction in flight.

26.     Mr. Hitchcock and others immediately reported these safety issues to Defendant John Solo directly, but he disregarded them, saying the planes fly "just fine" without transponders, a clear violation of relevant flight regulations.

27.     In late 2023, Mr. Hitchcock and others learned that Mr. Foody and another employee were having an extramarital affair.

28.     Mr. Foody and his partner engaged in increasingly bold and inappropriate sexual or romantic touching openly in the workplace, causing Mr. Hitchcock and other employees at Solo Aviation to become uncomfortable.

29.    Mr. Hitchcock also discovered and observed that certain flights were not being properly logged as flight lessons against Solo Aviation policy, on information and belief, so that Mr. Foody and others could have sex in the airplanes.

30.    At least one of Mr. Hitchcock's flight students, who was also a part-time employee of the Company, reported that this conduct made her uncomfortable in the workplace to Ms. Nagpal in or around February 2024, but again no action was taken by the Company or by Mr. Solo.

31.    Around this same time, Mr. Hitchcock was horrified to learn from a female coworker that Mr. Foody had sexually assaulted her in a common area, touching her buttocks without her consent.

32.     Mr. Foody also would make sexually suggestive comments to the same female coworker and to other coworkers about her.

33.    Mr. Hitchcock felt he had no choice but to speak out himself and oppose the misconduct he was experiencing and witnessing.

34.    Beginning in or around February, 2024, he complained about misconduct and harassment and violations of company policy to Ms. Nagpal multiple times, reporting and opposing what he believed was sex discrimination, sex harassment, and a hostile work environment for himself and for female employees and flight students.

35.    Upon information and belief, Ms. Nagpal relayed these concerns to

Solo Aviation's HR Manager, Deborah Redding on or around March 5, 2024.

36.    However, rather than investigating Mr. Hitchcock's and others' complaints and taking appropriate corrective or remedial action, Defendant Solo responded by forbidding Mr. Foody from flying with young female students. This "solution" was woefully inadequate and was outright disregarded by Mr. Foody.

37.    In or around early April 2024, another female coworker of Mr. Hitchcock confided in him she felt she had no choice but to quit her employment, due to the inappropriate sexually harassing and retaliatory behavior of Mr. Foody and of Mr. Solo himself.

38.    She informed Mr. Hitchcock that due to the toxic work environment she had no choice but to quit.

39.    Mr. Hitchcock then spoke with both Mr. Solo and later Ms. Redding directly, again opposing and report what he believed was sex discrimination, sex harassment, and a hostile work environment for himself and for female employees and flight students.

40.    Shockingly, Mr. Solo responded in part by dismissing Mr. Hitchcock's opposition as gossip, telling Hitchcock that people have sex "all the time," and that sex in the workplace wasn't a "big deal."

41.    Solo demanded that Hitchcock not make any further complaints or raise the subject with anyone at the Company again.

42.     Mr. Solo then began to retaliate against Mr. Hitchcock, restricting him from going to the front desk area, into the office, to either MX shop, or to the basement, which he referred to as "damage control."

43.     Mr. Solo also reduced Mr. Hitchcock's hours, abruptly removing him from all front desk shifts he was scheduled for.

44.     Mr. Hitchcock continued to speak to Ms. Redding on multiple occasions about the sexual harassment and discrimination he was witnessing and hearing about, as well as the retaliation Mr. Solo was subjecting him to in response to his complaints, but Ms. Redding took no action.

45.     Mr. Solo's efforts to retaliate against Mr. Hitchcock made it increasingly difficult for him to perform his job.

46.     Astonishingly, Ms. Redding simply admitted that, per Mr. Solo, these retaliatory restrictions were intended to deter or keep Mr. Hitchcock from talking to anyone about what he was witnessing and experiencing.

47.     Mr. Solo explained to Ms. Redding that he didn't want Hitchcock "talking about 'things.'"

48.     Mr. Solo then terminated Mr. Hitchcock abruptly on April 23, 2024. The stated reason for his termination was that he would not stop talking about Mr. Foody's extramarital affair and sexual misconduct.

49.     Mr. Hitchcock feared Mr. Solo would further retaliate by making false,

negative regulatory reports regarding his performance as a flight instructor to the Pilot Record Database, and therefore asked to resign in lieu of termination, but only after Mr. Solo had made unequivocally clear Hitchcock's employment with Solo Aviation was terminated effective immediately.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII
### (Defendant Solo Aviation)

50.    Plaintiff incorporates by reference all foregoing paragraphs.

51.    At all relevant times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII.

52.    Plaintiff repeatedly engaged in conduct protected under Title VII, *i.e.*, opposing and complaining of sex based discriminatory and harassing conduct by Defendant Solo Aviation's agents, servants, and/or employees and the existence of a hostile work environment.

53.    Plaintiff's protected activity was made in good faith.

54.    Defendants had knowledge of Plaintiff's protected activity, to-wit: Plaintiff repeatedly complained to his supervisors and to Solo Aviation's owner, Defendant Solo, about a pattern and practice of ignoring and not remediating unlawful employment practices.

55.    Defendants subsequently took adverse, retaliatory actions against Plaintiff by first reducing his hours and restricting his access to flight facilities and

flight time and then by terminating him from his employment.

56.    Plaintiff's protected conduct was a significant factor in Defendants' adverse employment actions taken against him.

57.    The retaliation would not have occurred had Plaintiff not engaged in activity protected by Title VII.

58.    Defendant's actions were retaliatory and in violation of Title VII.

59.    As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered bodily injury, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

60.    As a further direct and proximate result of Defendants' violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future

## COUNT II
## ELCRA – RETALIATION
### (both Defendants)

61.    Plaintiff incorporates by reference all foregoing paragraphs.

62.    At all relevant times, Plaintiff was an employee, and Defendant Solo

Aviaiton was his employer, covered by and within the meaning of ELCRA.

63.    Plaintiff repeatedly engaged in conduct protected under ELCRA, *i.e.*, opposing and complaining of sex based discriminatory and harassing conduct by Defendant Solo Aviation's agents, servants, and/or employees and the existence of a hostile work environment.

64.    Plaintiff's protected activity was made in good faith.

65.    Defendants had knowledge of Plaintiff's protected activity, to-wit: Plaintiff repeatedly complained to his supervisors and to Solo Aviation's owner, Defendant Solo, about a pattern and practice of ignoring and not remediating unlawful employment practices.

66.    Defendants subsequently took adverse, retaliatory actions against Plaintiff by first reducing his hours and restricting his access to flight facilities and flight time and then by terminating him from his employment.

67.    Plaintiff's protected conduct was a significant factor in Defendants' adverse employment actions taken against him.

68.    The retaliation would not have occurred had Plaintiff not engaged in activity protected by ELCRA.

69.    Defendants' actions were retaliatory and in violation of ELCRA.

70.    As a direct and proximate result of Defendants' violation of ELCRA, Plaintiff has suffered bodily injury, emotional and physical distress, mental and

physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

71.     As a further direct and proximate result of Defendants' violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT III**
**TITLE VII – DISCRIMINATION**
**(Defendant Solo Aviation)**

72.     Plaintiff incorporates by reference all foregoing paragraphs.

73.     At all relevant times, Plaintiff was an employee, and Defendant was his employer, covered by and within the meaning of Title VII.

74.     Plaintiff was a protected person under Title VII on the basis of his association with and advocacy for members of a recognized protected class.

75.     Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

76.     But for his association with and advocacy for members of a recognized protected class, Plaintiff would not have been subjected to adverse employment actions including termination.

77.    Defendant's actions constituted unlawful discrimination against Plaintiff because of his association with and advocacy for members of a recognized protected class.

78.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered bodily injury, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

79.    As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## ELCRA – DISCRIMINATION
### (Both Defendants)

80.    Plaintiff incorporates by reference all foregoing paragraphs.

81.    At all relevant times, Plaintiff was an employee, and Defendant Solo Aviation was his employer, covered by and within the meaning of ELCRA.

82.    Plaintiff was a protected person under ELCRA on the basis of his association with and advocacy for members of a recognized protected class.

83.     Defendants subjected Plaintiff to adverse employment actions, up to and including termination.

84.     But for his association with and advocacy for members of a recognized protected class, Plaintiff would not have been subjected to adverse employment actions including termination.

85.     Defendants' actions constituted unlawful discrimination against Plaintiff because of his association with and advocacy for members of a recognized protected class.

86.     As a direct and proximate result of Defendants' violation of ELCRA, Plaintiff has suffered bodily injury, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

87.     As a further direct and proximate result of Defendants' violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

**COUNT V**
**WRONGFUL TERMINATION/RETALIATION IN VIOLATION OF**
**MICHIGAN'S PUBLIC POLICY**
**(Defendant Solo Aviation)**

88.     Plaintiff incorporates by reference all foregoing paragraphs.

89.     During his employment, Plaintiff engaged in conduct protected under the public policy of the State of Michigan. Such conduct included seeking to enforce the rules and policies of Defendant Solo Aviation, federal flight safety regulations, and state and federal laws.

90.     Defendant's termination of Plaintiff's employment was in violation of the public policy of the State of Michigan.

91.     Defendant terminated Plaintiff in whole or in part in retaliation for his conduct in conformance with the public policy of the State of Michigan.

92.     As a direct and proximate result of Defendant's violation of public policy, Plaintiff has been placed in financial distress and has suffered a loss of earnings, benefits, earning and benefits capacity and ability to work, and will suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## **Relief Requested**

**WHEREFORE** Plaintiff requests this honorable court grant him the following relief:

a.     Actual and consequential damages as may be proven;
b.     Punitive damages, for Defendants' willful conduct, as warranted by law;
c.     Equitable relief, compensatory damages, and exemplary damages, as warranted by law;
d.     Costs, attorneys' fees, and interest incurred prosecuting this claim; and

e.     All further relief as the Court deems just and equitable.

Respectfully submitted,

**DOERR MACWILLIAMS HOWARD PLLC**

*/s/ Samuel L. Estenson*
Samuel L. Estenson (P82414)
*Attorneys for Plaintiff*
301 N. Main St., Suite 260
Ann Arbor, MI 48104
(734) 926-2111
sam@dmhlawyers.com

Dated: July 11, 2025

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HAYDEN HITCHCOCK, an
individual,

      Plaintiff,

v.

SOLO AVIATION, INC, a Michigan
domestic profit corporation,

      Defendant.

Case No.

Hon.

---

Samuel L. Estenson (P82414)
**Doerr MacWilliams Howard PLLC**
*Attorneys for Plaintiff*
301 N. Main St., Suite 260
Ann Arbor, MI 48104
(734) 926-2111
sam@dmhlawyers.com

---

## <u>JURY DEMAND</u>

NOW COMES Plaintiff Hayden Hitchcock, by and through his attorneys, DOERR MACWILLIAMS HOWARD PLLC, and hereby demands a trial by jury in the above-captioned matter for all issues so triable.

      Respectfully submitted,

      **DOERR MACWILLIAMS HOWARD PLLC**

/s/ Samuel L. Estenson
Samuel L. Estenson (P82414)
*Attorneys for Plaintiff*
301 N. Main St., Suite 260
Ann Arbor, MI 48104
(734) 926-2111
sam@dmhlawyers.com

Dated: July 11, 2025